## MORROW v. MOON.

(Court of Civil Appeals of Texas. El Paso. April 4, 1912.)

BROKERS (§ 86*)—COMPENSATION—EVIDENCE —SUFFICIENCY.

In an action by a real estate broker for compensation claimed to be due for a sale of land, evidence *held* insufficient to show that the broker produced a purchaser who was ready, willing, and able to buy the land at the price at which he was authorized to sell.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 116–120; Dec. Dig. § 86.*]

Appeal from Taylor County Court; T. A. Bledsoe, Judge.

Action by A. R. Moon against J. H. Morrow. From a judgment for plaintiff, defendant appeals. Reversed and rendered.

B. A. Cox, of Abilene, for appellant. Hill & Hill, of Abilene, for appellee.

HIGGINS, J. Appellee filed suit against appellant, alleging that he was a real estate broker, and that appellant placed in his hands 1,276 acres of land, with authority to sell the same at $8 per acre, and that he found a purchaser for 846 acres of the land on or about December 1, 1910, in the person of Tom Windham, who was ready, willing, and able to purchase the same at $8 per acre; that he advised the defendant that he had found such purchaser, but that the defendant refused to sell the same to Windham or to accept him as such purchaser, wherefore he sued for his commission due upon the sale of said 846 acres of land.

The facts in this case are undisputed, and a brief summary of the testimony is as follows:

The plaintiff, Moon, testified that Morrow placed the 1,276 acres of land described in his petition in his hands for sale, and authorized him to sell it at the rate of $8 per acre. This was in the spring of the year 1910, and Morrow proposed that he go to Callahan county where the land was situate, and see if the land could be sold to Tom Windham, who owned adjoining land. Moon was unable to go, but he wrote two letters to Windham in regard to selling him the land, and received no reply. In November, 1910, appellee was in Baird one day, and met Windham, and for the first time talked with him about buying the land, and he agreed to go to Abilene the next day to talk it over. Windham came to Abilene, called upon Moon, and made an offer of $7.75 per acre for the land. Moon told him that he could not take less than $8 per acre, and urged him to take it at that price, but he did not do so, remarking, "Let the $7.75 proposition sweat a

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

while." Moon had never seen him again, and had no communciation with Windham with reference to the land until after he had bought it from Henry James. Moon had no authority to sell for less than $8 per acre, and Windham never at any time offered him that price. Moon informed Morrow of Windham's offer of $7.75 per acre for the land, and Morrow declined to accept it. Windham testified to the same facts as had been testified to by Moon regarding the negotiations had between those two with reference to the sale of land, and he further testified that, after his negotiations with Moon had terminated, Judge Russell one day called him up over the phone and talked to him about buying the land, and he told Judge Russell to tell Moon that he would take the land at $8 per acre; that he did not then know anything about James owning the land, but that James deeded the land to him, for which he paid $8 per acre. Henry James testified that he was engaged in the banking business; that the bank with which he was connected had a deed of trust on the 1,276 acres of Morrow's land, amounting to $8,000 or $9,000; that by deed dated December 22, 1910, he bought this land from Morrow at $8 per acre; that he knew that the land was adjacent to Windham's land, and that Windham would like to own it, so, after having bought the land from Morrow, he had Judge Russell of Baird to take the matter up with Windham, and see if he could sell him the land at $8 per acre, and that a deal for the land at $8 per acre was closed with Windham through Judge Russell; that so far as he knew Morrow knew nothing of the deal with Windham until after it had been sold; that the purchase price of the land conveyed to Windham was applied upon the indebtedness of Morrow to the bank, and he then reconveyed to Morrow the balance of the 1,276 acres of land, in payment therefor, taking vendor's lien notes against the land for the balance due the bank on the loan to Morrow.

From the foregoing statement of the testimony, it will be noted that the plaintiff's allegation that he found a purchaser for the land for Morrow in the person of Tom Windham, who was ready, willing, and able to purchase at the price which he was authorized to sell to same, and that Morrow refused to convey the same to Windham, is wholly unsupported by the testimony, and that the true fact was that Morrow sold the land to James, who, in turn, sold it to Windham through Judge Russell. Appellant's first assignment of error complaining of the refusal of the court to give a peremptory instruction for the defendant must therefore be sustained.

The only possible theory under the facts detailed. upon which a finding for the appellee could be sustained, is that the conveyance from Morrow to James was colorable and for the purpose of defrauding Moon out of his

commission. There is no such issue as this, however, raised by the pleadings or the evidence; and the case is therefore reversed, and judgment here rendered in favor of the appellant.